**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hillary L. Partida, et al., | No. CV-07-0674-PHX-DGC |
| Plaintiffs, | |
| vs. | **ORDER** |
| American Student Loan Corporation, et al., | |
| Defendants. | |

Plaintiffs filed suit against their former employer, seeking to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Dkt. #1. The parties have filed motions asking the Court to determine whether Plaintiffs are exempt, pursuant to 29 U.S.C. § 207(i), from the statute's overtime provisions as a matter of law. Dkt. ##18, 24. For the foregoing reasons, the Court concludes that Plaintiffs are not exempt.[1]

**I.    Factual Background.**

The underlying facts are undisputed, though the parties have objected to the other side's characterization of the facts and to the use of certain terms such as "sales," "customers," and "commissions." *See* Dkt. ##19, 26. The facts, free of such contested language, are as follows.

---

[1] The parties' requests for oral argument are denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

Defendant American Student Loan Corporation ("ASLC") is in the business of locating, though advertisements, individuals interested in consolidating their student loans, preparing loan applications for individuals who have responded to the advertisements, and referring those applications to third-party lenders who then work directly with the interested individuals to complete the loan transactions. *See* Dkt. #19 ¶¶1, 6, 11; Dkt. #26 ¶¶1, 6, 11. ASLC receives payment "from a [l]ender who completes a loan transaction or sends the loan application to another [l]ender to complete the loan transaction." Dkt. #19 ¶7 (citation omitted); *see also* Dkt. #26 ¶7.

Hillary L. Partida and Mark C. Gravatt (collectively, "Plaintiffs") worked for ASLC from approximately March through August of 2005. *See* Dkt. #25 ¶2. Plaintiffs' general responsibilities were to field telephone calls from individuals inquiring about ASLC's services and prepare the loan applications that would be referred to lenders. *See* Dkt. #19 ¶9; Dkt. #26 ¶9. Plaintiffs' wages were not hourly-based. Rather, they were a function of the number and types of loan applications Plaintiffs processed. *See* Dkt. #19 ¶10; Dkt. #26 ¶10.

ASLC typically receives more business in May and June, the months in which there is greater student loan activity. *See* Dkt. #19 ¶¶15, 16; Dkt. #26 ¶¶15, 16. Employees holding positions such as Plaintiffs' usually would work more than forty hours per week during the peak months. *See id.*

**II.    This Suit.**

Plaintiffs initiated this action against ASLC and its manager, Brian Skowronski (collectively, "Defendants"), claiming that Plaintiffs are entitled to overtime compensation for the time they worked in excess of forty hours per week. Dkt. #1. The FLSA generally forbids an employer engaged in commerce from "employ[ing] any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA contains an exemption from this overtime requirement. Employers are not required to pay overtime

(1) to an employee of a "retail or service establishment," (2) if the regular rate of pay of the employee "is in excess of one and one-half times the minimum hourly rate," and (3) if "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." *Id*. at § 207(i).

Defendants contend that Plaintiffs are exempt from the FSLA's overtime provisions under § 207(i). *See* Dkt. #18. Plaintiffs argue that the "retail or service establishment" exemption does not apply to their employment in ASLC's loan brokerage business, and that Defendants therefore must comply with the FSLA overtime requirements. *See* Dkt. #24.

### III. Plaintiffs Are Not Exempt.

"Interpretations of the FLSA and its regulations are questions of law[.]" *Gieg v. DDR, Inc.*, 407 F.3d 1038, 1044-45 (9th Cir. 2005). "[I]n construing the FLSA, we must be mindful of the directive that it is to be liberally construed to apply to the furthest reaches consistent with Congressional direction." *Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) (citation omitted). "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit." *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (internal quotes and citation omitted).[2] An employer has the affirmative responsibility of proving an exemption under the FLSA. *See Gieg*, 407 F.3d at 1045.

The Court finds that Defendants have not carried their burden of demonstrating that ASLC is a "retail or service establishment" within the meaning of the FLSA. As Defendants have not met this threshold requirement, the Court need not decide whether ASLC could satisfy the two other prongs of 29 U.S.C. § 207(i).

The FLSA regulations indicate that 29 U.S.C. § 213(a)(2), though repealed, continues to supply the definition of a "retail or service establishment." *See* 29 C.F.R. § 779.441; *see also Gieg*, 407 F.3d at 1047. Section 213(a)(2), which is reproduced in 29 C.F.R. § 779.24,

---

[2] Some courts have held that this rule of judicial interpretation merely operates as a tie-breaker. *See e.g., Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007). The Court is unaware of any Ninth Circuit case endorsing this limiting proposition.

- 3 -

1  provided that "[a] 'retail or service establishment' shall mean an establishment 75 per centum
2  of whose annual dollar volume of sales of goods or services (or of both) is not for resale and
3  is recognized as retail sales or services in the particular industry."  The Ninth Circuit has
4  correctly noted that "[a]lthough this definition narrows the class of establishments that may
5  qualify as retail, it provides little guidance in determining the nature of the 'retail' concept
6  as an initial matter." *Martin v. Refrigeration Sch., Inc.*, 968 F.2d 3, 5 n.1 (9th Cir. 1992).

Given the ambiguity of this definition, the Ninth Circuit has turned to regulations issued by the Department of Labor ("DOL") for assistance in determining whether a given employer is a "retail or service establishment." *See id.* at 5 (stating in the context of the FLSA that the court will "defer to the agency's answer as long as it represents a reasonable construction of the statute.") (citing *Chevron USA, Inc., v. NRDC*, 467 U.S. 837, 844 (1984)). The DOL regulations identify three characteristics of such an establishment: it typically "sells goods or services to the general public," "serves the everyday needs of the community in which it is located," and "performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." 29 C.F.R. § 779.318(a). The DOL also provides a partial list of establishments whose goods or services may be recognized as retail, including auto dealerships, restaurants, hotels, book stores, clothing stores, grocery stores, and furniture stores, *id.* at § 779.320, as well as a partial list of establishments lacking "retail concept," including accounting firms, credit companies, finance companies, insurance brokers, loan offices, and tax services, *id.* at § 779.317.

Defendants' argument that ASLC is not a "retail or service establishment" rests primarily on *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp.2d 529 (N.D. Ill. 2006). Dkt. #18 at 7.  In *Gatto*, the plaintiff sought overtime wages under the FLSA from her former employer, a company whose "primary business is finding and closing residential mortgage loans for Illinois consumers." *Gatto*, 442 F.Supp.2d at 532.  The employer sought summary judgment based on the exemption in 29 U.S.C. § 207(i).  Addressing whether the

employer was a "retail or service establishment," the court observed that "mortgage broker" is not listed in 29 C.F.R. § 779.317 and therefore concluded that this regulatory provision "does not preclude [the employer] from claiming the exemption." *Gatto*, 442 F.Supp.2d at 540. With respect to the DOL's three characteristics of a "retail or service establishment," the court found that the employer "sells its services to the general public," "serves the everyday needs of the community," and is at the very end of the stream of distribution because "[o]nce the loan has been closed or refinanced, [the employer's] job is done" and the employer's services are not for resale. *Id*. at 540-41. The district court accordingly granted summary judgment for the employer. *Id*. at 542.

The Court is not persuaded by the reasoning in *Gatto*. To begin with, *Gatto* appears to have misapplied the Ninth Circuit's ruling in *Gieg*. The court stated in *Gatto*:

> [t]he fact that [the employer's] brokerage services relate to loans does not necessarily preclude it from qualifying for the exemption as a "retail or service establishment." *See Gieg*, 407 F.3d 1038, 1052-53 (holding that employees whose commissions derive from financing and insurance aspects of retail automobile sales are exempt from overtime).

*Gatto*, 442 F.Supp.2d at 539. In *Gieg*, the Ninth Circuit held that plaintiffs, finance and insurance managers of retail automobile dealerships, were exempt from FLSA's overtime provisions. The Ninth Circuit specifically noted that the inquiry into whether a business is a "retail or service establishment" "focuses on the retail sales of an 'establishment' as a whole and not on the individual activity of a particular employee. It is uncontested that automobile sales are recognized as retail sales by the industry and by the FLSA." *Gieg*, 407 F.3d at 1047. Indeed, auto dealerships are explicitly included in the DOL's partial list of retail establishments. 29 C.F.R. § 779.320. Thus, the employees in *Geig* fell within the FSLA exemption not because they were engaged in financing activities as *Gatto* suggests, but because they were employed in auto dealerships – entities that undisputably constitute "retail or service establishment[s]." The employer in *Gatto,* by contrast, was engaged in the business of connecting members of the public to loan offices – entities expressly recognized as non-retail. 29 C.F.R. § 779.317. The *Gatto* court did not assign any weight to this fact, an approach seemingly inconsistent with *Gieg*.

- 5 -

More importantly, an examination of ASLC's operation suggests that it is an integral and upstream part of the loan origination business and therefore is on the non-retail end of the establishment spectrum. ASLC works with lenders; it does not work with companies considered to be retail establishments under the DOL regulations. ASLC depends on the lenders for business; if the lenders no longer functioned, ASLC would be unable to refer loan applications and earn money from the resulting loans. ASLC's activities are not incidental to the lenders' activities; they directly facilitate the loan process.

Nor is ASLC at the very end of a stream of retail distribution. Referring individuals to potential lenders places ASLC mid-stream between the public and the lenders. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (middlemen are not at the very end of the stream of distribution). In particular, ASLC does not distribute a good or service that the public seeks in and of itself. A loan referral provides the basis for a subsequent transaction in which an individual obtains what he or she ultimately seeks – a consolidated student loan. *See Martin*, 968 F.2d at 9 (holding that specialized schools were not at the very end of the stream of distribution because the specialized education itself does not benefit society, it is the later application of that education that provides the benefit).

The FLSA exemption was designed to exempt high commission workers in "big ticket" departments. *See Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir. 1987). Here, Plaintiffs do not appear to be working in the "big ticket" departments that the FLSA exemption intended to cover. The Ninth Circuit described "big ticket" departments in these words: "[u]nlike most other workplaces, where the workload is relatively predictable and lends itself to shift work and overtime, the work at big ticket item dealerships is driven by the vagaries of consumer demand and is inherently unpredictable." *Gieg*, 407 F.3d at 1046 (internal quotes omitted). Defendants admit that ASLC's business is predictable. It typically generates more business in May and June than in other parts of the year, but this increase is anticipated. *See* Dkt. #19 ¶¶15, 16. ASLC can manage its workforce accordingly. It is not subject to the unforeseeable demands that the exemption contemplates.

In short, Defendants have not demonstrated that ASLC is a "retail or service establishment" within the meaning of the FLSA exemption. The Court therefore will grant Plaintiff's motion for partial summary judgment and deny Defendants' motion.

**IV.   Motion to Strike.**

Defendants move to strike certain terms and statements contained in Plaintiffs' statement of facts. Dkt. #29. As the Court did not rely on this language in resolving the issues addressed in this order, the motion to strike will be denied as moot.

**IT IS ORDERED:**

1.   Defendants' motion for summary judgment (Dkt. #18) is **denied**.

2.   Plaintiffs' motion for partial summary judgment (Dkt. #24) is **granted**.

3.   Defendants' motion to strike (Dkt. #29) is **denied** as moot.

4.   The final pre-trial conference will be scheduled by separate order.

DATED this 18th day of January, 2008.

*[signature]*

David G. Campbell
United States District Judge